**IN RE: Michael H. MELTZER, Alleged Debtor.**

**No. 13 B 31151**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Signed August 25, 2015

---

Howard Leventhal, pro se

Malgorzata Kubiak, pro se

No appearance for Pegasus Electronics HK Ltd.

Attorneys for alleged debtor Michael H. Meltzer: Joel A. Stein, Jeffrey E. Schiller, Leon E. Farbman, Deutsch, Levy & Engel, Chartered, Chicago, IL

## *MEMORANDUM OPINION*

A. Benjamin Goldgar, United States Bankruptcy Judge

Howard Leventhal uses the federal courts to make war on people who sue him or his ex-wife, Malgorzata Kubiak, in the state courts. Sometimes, he does this as retaliation. Sometimes, he does it to buy time. Sometimes, he does it to exert pressure. Whatever the motive, Leventhal's tactic is to "make a federal case" out of everything, turning mundane state court matters into federal litigation, something he believes (wrongly, most of the time) will intimidate his opponents and make them back off.

Leventhal employs two main techniques. He removes (or has Kubiak remove) state court actions to the district court, often removing the same action again after it has been remanded. He also files (or has Kubiak file) frivolous federal actions against state court opponents, naming as defendants not only the opponents themselves but often their lawyers and even their family members.

In 2013, Leventhal and Kubiak tried something new. When Kubiak failed to pay her rent and her landlord, Michael Meltzer, sued in the state court to evict her, Leventhal, Kubiak, and Pegasus Electronics HK Ltd. (a corporation Leventhal had just formed) filed an involuntary chapter 7 bankruptcy case against him. The goal, Leventhal announced before the filing, was to stall the eviction action and harass Meltzer. When the involuntary case was quickly dismissed, Meltzer sought

damages and sanctions. After an evidentiary hearing, the court concluded the petition had been filed in bad faith and found Meltzer entitled to attorney's fees, costs, and punitive damages under section 303(i) of the Bankruptcy Code, along with other relief. *See In re Meltzer,* 516 B.R. 504, 506 (Bankr.N.D.Ill.2014). All that remains now is to determine the amounts of attorney's fees, costs, and punitive damages, as well as the propriety of an order Meltzer requests limiting the petitioners' ability to litigate in the federal courts.

For the reasons set forth below, Meltzer will be awarded $60,788.86 in attorney's fees and $105.17 in costs against Leventhal, Kubiak, and Pegasus, jointly and severally. Meltzer will also be awarded $120,000 in punitive damages against Leventhal, $40,000 in punitive damages against Kubiak, and $20,000 in punitive damages against Pegasus. Finally, Leventhal and Kubiak will be barred from filing anything in the bankruptcy court for this district (other than a notice of appeal from this decision) without first obtaining leave of court.

## 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). *See In re Glannon,* 245 B.R. 882, 887 (D.Kan.2000); *In re Letourneau,* 422 B.R. 132, 135 (Bankr. N.D.Ill.2010). Although the case has been dismissed, the court retains jurisdiction to award relief under sections 303(i) and (k) and to consider other sanctions. *See Glannon,* 245 B.R. at 886; *Letourneau,* 422 B.R. at 135; *In re Davenport,* 175 B.R. 355, 361–62 (Bankr.E.D.Cal.1994).

## 2. Background

Familiarity with the facts is assumed. What follows is an outline sufficient to provide context. A full account appears in the court's opinion finding sanctions warranted. *See Meltzer,* 516 B.R. at 506–13. A description of much (though not all) of Leventhal and Kubiak's other litigation appears in *In re Meltzer,* 534 B.R. 757, 768–70, 2015 WL 4550017, at *8–9 (Bankr. N.D.Ill. July 29, 2015).

Kubiak and Leventhal were once married, and during their marriage they lived in a house rented from Meltzer. They later divorced, and Leventhal moved out. In 2012, Kubiak stopped paying rent. When efforts to get her to pay proved unsuccessful, Meltzer served her with a notice terminating the tenancy. Rather than pay the rent or move out, however, Kubiak took a third tack: she told Meltzer she would sue him under the Fair Housing Act ("FHA") if he did not let her remain on the premises. With Leventhal's assistance, she eventually filed an action against Meltzer in the district court that alleged Meltzer had sexually harassed her in violation of the FHA. *See Kubiak v. Meltzer,* No. 12 C 6849, 2013 WL 1114203 (N.D.Ill.2013).[1]

But the FHA action did not have the desired effect. Meltzer went ahead and filed a forcible entry and detainer action against Kubiak in Illinois state court seeking to have her evicted. Acting as Kubiak's representative, Leventhal then threatened that if some sort of settlement could not be reached, he would file an involuntary bankruptcy petition against Meltzer. Leventhal's theory, described in an e-mail to Meltzer's lawyer, was that upon the filing of the petition, the claim in

---

1. Leventhal's hand in the FHA action is evident from the papers Kubiak filed. Leventhal's legal work has a consistent format and appearance, and his rhetorical style is unmistakable. Leventhal later filed an appearance in the FHA action and even moved to intervene (a motion the district court denied).

the eviction action would become part of the bankruptcy estate. Only the trustee, not Meltzer, would be able to pursue it.

Undaunted, in August 2013 Meltzer moved in the eviction action for a judgment of possession. Five days later, Leventhal, Kubiak, and Pegasus made good on Leventhal's threat, filing the involuntary petition that resulted in this case. Attached to the petition were three memoranda purporting to describe each petitioner's claim against Meltzer.

Despite the bankruptcy petition, the state court proceeded to trial on Meltzer's motion. And rightly so: under section 303(f) of the Code, the filing of an involuntary petition does not deprive an alleged debtor of his ability to use property of the estate pending entry of an order for relief. *See* 11 U.S.C. § 303(f). The claim therefore remained Meltzer's to pursue despite the petition. At the conclusion of the trial, the state court entered judgment in favor of Meltzer, awarding him $52,600 in damages against Kubiak and $5,000 in attorney's fees.

About a week later, Meltzer moved to dismiss the bankruptcy case and sought sanctions against Leventhal, Kubiak, and Pegasus for having filed it. Although the involuntary petition had failed to serve its intended purpose (since the eviction action had not been stopped), Leventhal opposed dismissal. His opposition made an evidentiary hearing necessary, and a hearing was set. When the petitioners failed to submit any pretrial materials, however, they were barred from presenting evidence at the hearing—and with no evidence forthcoming from the parties having the burden of proof, no hearing was needed. The motion was granted and the case dismissed.

In March 2014, the court held an evidentiary hearing on the final matters in the case: Meltzer's requests for relief under sections 303(i) and (k), 11 U.S.C. §§ 303(i), (k), and Bankruptcy Rule 9011, Fed. R. Bankr.P. 9011. Meltzer testified at the hearing, as did an attorney for Gene Schenberg, a creditor of Leventhal. Of the three petitioners, only Leventhal appeared. He called no witnesses himself and when required to testify invoked his Fifth Amendment privilege in response to all but two questions from Meltzer, declining even to say whether he was one of the petitioners in the case.

In its post-hearing decision, the court found that Leventhal, Kubiak, and Pegasus had filed the involuntary petition against Meltzer in bad faith. "Indeed," the court said, "the bad faith was grotesque: the case was thoroughly fraudulent and an egregious abuse of the bankruptcy system. The bad faith call is not a close one." *Meltzer*, 516 B.R. at 514. The evidence amply justified that conclusion for three reasons.

● First, the evidence showed that one of the petitioners, Pegasus, was bogus, a corporation Leventhal had created only two weeks before the petition was filed presumably to satisfy the three-creditor requirement in section 303(b)(1). The signature of the "attorney" for the corporation on the petition as well as on the memorandum concerning Pegagus's claim was forged; the person whose name appeared under it was neither an attorney nor a Pegasus employee, and she denied signing the memorandum. *Id.* at 509, 516–17.

● Second, the evidence showed that two of the three petitioning creditors, Leventhal and Pegasus, were not in fact creditors of Meltzer. They had no claims against him. The third petitioner, Kubiak, had a claim against Meltzer (the claim in the FHA action), but that claim was in bona fide dispute. *Id.* at 509, 517. None of the petitioners, then, was entitled under section 303(b)(1) to file an involuntary petition against Meltzer.

• Third, the evidence showed the petition was filed for an obviously improper purpose—not as a collective action to preserve value for creditors but as a tactical maneuver to gain a temporary advantage in Meltzer's state court eviction action. *Id.* at 508, 515–16. Worse still, the involuntary petition was part of a larger campaign of litigation abuse against Meltzer, one that included Kubiak's FHA action, a lis pendens recorded against Meltzer's property, an action in the state court to "foreclose" on the lis pendens, repeated attempts to remove state court litigation to the district court, and numerous appeals. *Id.* at 507–08, 510–12.[2]

Because the petition had been dismissed and had been filed in bad faith, Meltzer was awarded his attorney's fees and costs under sections 303(i)(1)(A) and (B), as well as punitive damages under section 303(i)(2)(B), against all three petitioners. *See id.* at 514–18. He was also awarded non-monetary relief under sections 303(k)(1) and (2). *See id.* at 518–19.

Since the hearing on sanctions had been bifurcated, *see id.* at 506 n. 1, the court set further briefing on the amounts of fees, costs, and punitive damages. Also to be briefed was Meltzer's request for an order under Rule 9011(c)—which the court found had been violated as well, *see id.* at 519–21—that would restrict the petitioners's ability to litigate in the bankruptcy court for this district as well as in all other courts, state and federal, in the United States. These matters are now briefed[3] and ready for decision.

### 3. Discussion

### a. Attorney's Fees and Costs

An alleged debtor awarded attorney's fees and costs because an involuntary petition against him has been dismissed is entitled to "reasonable" fees. 11 U.S.C. §§ 303(i)(1)(A), (B). Because fees assessed under section 303(i)(1) are considered damages, *Meltzer*, 516 B.R. at 517 n. 12; *In re Better Care, Ltd.*, 97 B.R. 405, 410 (Bankr.N.D.Ill.1989), their reasonableness is not determined under section 330, 11 U.S.C. § 330, which applies to fees awarded to a professional from the bankruptcy estate, *In re Paczesny*, 282 B.R. 646, 650 (Bankr.N.D.Ill.2002); *In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 906–07 (Bankr.N.D.Ill.1994). So the utility of the attorney's services to the estate is irrelevant. *Paczesny*, 282 B.R. at 650.

Still, the fees must be "reasonable." *Id.*; *Poterek*, 169 B.R. at 906. The statute gives no guidance about what is a reasonable fee, *Poterek*, 169 B.R. at 906, but reasonable attorney's fees in bankruptcy cases are customarily determined using the "lodestar" method, *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 254 (9th Cir. BAP 2007); *see, e.g., In re Diloreto*, 388 B.R. 637, 652 (Bankr.E.D.Pa.2008) (using lodestar method to determine fees under section 303(i)(1)(B)), *aff'd*, 442 B.R. 373 (E.D.Pa.2010).

---

**2.** Leventhal even filed his own cross-motion for sanctions against Meltzer in the involuntary case. That motion was denied. *See id.* at 521–22. After the evidentiary hearing, Leventhal and Kubiak continued to file motions aimed at Meltzer in an apparent effort to run up his costs and get him to abandon his sanctions requests. The latest of these motions resulted in a $6,500 sanction against Leventhal under Rule 9011. *See Meltzer*, 534 B.R. at 770–71, 2015 WL 4550017, at *10.

**3.** Or as briefed as they will ever be. Only Leventhal filed a memorandum opposing Meltzer's requests. (Dkt. No. 169). A memorandum was filed purportedly by Kubiak (Dkt. No. 163), but as with many other papers Kubiak has purported to file in this case, the format, appearance, rhetorical style, and photographic image of Kubiak's signature all point to Leventhal as the real author. *See Meltzer*, 534 B.R. at 760–61, 2015 WL 4550017, at *1 n. 1; *Meltzer*, 516 B.R. at 513 n. 9, 518.

■■ Under the lodestar method, fees are calculated as "the hours reasonably expended multiplied by the reasonable hourly rate." *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir.2012); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir.2011). The lodestar approach is typically the "centerpiece" of attorney's fee calculations. *Pickett*, 664 F.3d at 639 (internal quotation omitted); *see also Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir.2010) (calling the lodestar method "the touchstone"). It yields a presumptively reasonable fee, and the presumption is a strong one. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010); *Pickett*, 664 F.3d at 639.

To arrive at Meltzer's fees and costs, then, three determinations must be made: "(1) the number of hours reasonably expended by ... counsel, (2) the reasonable hourly rate for those services, and (3) costs." *Johnson*, 668 F.3d at 931.

### i. Reasonable Hourly Rates

■■ The hourly rates of Meltzer's attorneys are reasonable. The reasonable hourly rate is the rate that is "derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (internal quotation omitted). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir.2004). The best evidence of an attorney's market rate, however, is the attorney's "actual billing rate for similar work." *Johnson*, 668 F.3d at 933; *see also Mathur v. Board of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (noting that the attorney's actual billing rate is "presumptively appropriate to use as the market rate" (internal quotation omitted)). The burden of proving the market rate is on the party seeking fees. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir.2007).

Meltzer was represented in the involuntary case by attorneys from Deutsch, Levy & Engel, Chartered, a Chicago law firm. In support of his claim for fees, Meltzer submitted an affidavit from one of his attorneys, Leon Farbman. The affidavit provides the hourly rates of the two Deutsch Levy partners, one associate, and one paralegal who worked on the case. (Dkt. No. 140 at ¶¶ 7–8). These rates are the normal hourly rates of the three attorneys and paralegal. (*Id.*). Also submitted was a second Farbman affidavit attaching copies of the invoices Deutsch Levy sent Meltzer for their work on the case. (Dkt. No. 167). The invoices indicate that he regularly paid the fees charged.

The two affidavits and the invoices are sufficient to show that the hourly rates are the relevant market rates and are reasonable. *See Stark*, 354 F.3d at 675 (affirming determination that hourly rates were reasonable based on affidavits attesting to hourly rates and payment of the fees at those rates where client had paid the fees and the rates were not contested). Leventhal has not challenged their reasonableness.

### ii. Reasonable Hours Expended

The hours Meltzer's attorneys spent defending the involuntary case, pursuing its dismissal, and pursuing sanctions, are also reasonable.

■ The lodestar method entitles the petitioning party to compensation only for attorney time "reasonably expended." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933; *Johnson*, 668 F.3d at 931. Time spent unreasonably cannot be compensated. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir.1996). In particular, time that is "excessive, redundant,

or otherwise unnecessary" will be disallowed, *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Johnson,* 668 F.3d at 931, as will time spent on unrelated matters, *Gautreaux,* 491 F.3d at 661, and time resulting from overstaffing the case, *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.,* 574 F.3d 852, 858 (7th Cir.2009).

 The party seeking fees has the burden of proving the reasonableness of the hours worked and should submit evidence supporting those hours. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *Spegon v. Catholic Bishop of Chi.,* 175 F.3d 544, 554–55 (7th Cir.1999). If the documentation is inadequate, the fee award may be reduced for that reason, as well. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. When, for example, time records are insufficiently specific, *Stark,* 354 F.3d at 674; *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1187 (7th Cir.1992), or time is "lumped" or "block-billed," *Tillman v. New Line Cinema Corp.,* No. 05 C 910, 2008 WL 5427744, at *9–10 (N.D.Ill. Dec. 31, 2008), *aff'd,* 374 Fed.Appx. 664 (7th Cir.2010), the problematic entries may be stricken or the fee reduced by a reasonable percentage, *Harper v. City of Chi. Heights,* 223 F.3d 593, 605 (7th Cir.2000).

The invoices show that the three Deutsch Levy attorneys spent a total of 179.2 hours from August 4, 2013, through March 27, 2014, on the case. At eight hours a day, assuming a five-day week, that means the attorneys spent just over four weeks of time. The fees for that time totaled $60,788.86. The work performed included preparation and presentation of several motions, preparation of numerous briefs, many necessary because of motions Leventhal filed; factual investigation; pre-

paring for the evidentiary hearing on the motion to dismiss; drafting pretrial materials for the sanctions hearing; preparing for that hearing; and conducting the sanctions hearing. The hours spent and the fees incurred for that much work are not only reasonable, they are modest.

True, some of entries on the invoices have problems. Several entries, for example, are lumped or block-billed. Two or three entries have only vague descriptions of the work performed. One entry includes work on the lis pendens "foreclosure" action which was not sufficiently related to the bankruptcy case to be compensable. *See Better Care,* 97 B.R. at 413 (finding fees spent on other litigation not sufficiently related to defense of involuntary petition). In several instances, the entries are partially redacted, but the time has not been adjusted to reflect the redactions.[4] These problems would ordinarily require a reduction in the fees awarded.

But no reduction is required here. The block-billing is not extensive enough to prevent an assessment of the reasonableness of the time spent. *See Milwaukee Deputy Sheriffs Ass'n v. Clarke,* No. 06 C 602, 2008 WL 337335, at *3 (E.D.Wis. Feb. 5, 2008), *aff'd,* 588 F.3d 523 (7th Cir.2009). Time attributable to the other deficient entries is negligible. Meanwhile, Deutsch Levy drastically trimmed its fee request even before submitting it. Deleted from the invoices are entries for law clerk and paralegal time, office conferences, numerous conferences with Meltzer, time spent researching arguments not made, and time spent on arguments the court rejected. (*See* Dkt. No. 140 at ¶ 5). Some of these

---

4. The affidavits explain that Deutsch Levy billed all time for work on Meltzer matters under the same matter number. (Dkt. No. 167 at ¶ 4). At the court's direction (*see* Dkt. No. 166), Deutsch Levy produced to Leventhal and also filed with the court the firm's original invoices, redacting descriptions of services for which compensation was not sought. Although many entries (and even whole pages) have been redacted in their entirety, some entries are redacted only in part.

deletions were probably unnecessary. Nevertheless, the hours for which compensation is sought have been reduced by more than 150, almost half the time spent on the case. (*Id.*). Meltzer also requests no fees for work after the March 2014 hearing, although two more briefs on sanctions were filed plus an affidavit and accompanying invoices, and he requests no fees for work on two of Leventhal's three appeals, *see Leventhal v. Meltzer*, No. 14 C 2765 (N.D.Ill.); *Leventhal v. Meltzer*, No. 14 C 7762 (N.D.Ill.).

 In figuring the lodestar amount, a court "need not perform a line-by-line review of a fee petition," *Super Pawn Jewelry & Loan, LLC v. American Envtl. Energy, Inc.*, No. 11 C 8894, 2015 WL 1777484, at *5 (N.D.Ill. Apr. 16, 2015), but can instead "take into account [its] overall sense of a suit...." *Fox v. Vice*, 563 U.S. 826, ——, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011). The goal in shifting fees, after all, "is to do rough justice, not to achieve auditing perfection." *Id.* at ——, 131 S.Ct. at 2216. Here, Deutsch Levy not only exercised "billing judgment," *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933, "winnowing the hours actually expended down to the hours reasonably expended," *Spegon*, 175 F.3d at 552 (internal quotation omitted), it may even have gone too far. With the hours and fees plainly reasonable, additional reductions because of a few blemishes on the invoices would be unfair. Deutsch Levy's voluntary reductions are more than sufficient. *Cf. Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10 C 1899, 2015 WL 1850599, at *6 (N.D.Ill. Apr. 21, 2015) (finding sufficient "plaintiffs' self-implemented reduction" in fees).

Just as Leventhal does not quarrel with Deutsch Levy's rates, he does not suggest the hours billed were not actually spent on the case. Instead, he contends that the invoices are fraudulent, asserting that no evidence establishes their genuineness and shows they were actually sent to Meltzer. He notes that the underlying attorney time sheets have not been supplied. As proof that the invoices are fabrications, Leventhal points to small details: the format of the page numbers, the differences in the invoice numbers, and the rounded nature of Meltzer's payments ("$48,500 even," he notes). He also complains that many entries on the invoices have been redacted and that all of the invoices are headed simply "Federal Court Lawsuit."

None of this is enough to give pause. The second Farbman affidavit attests to the genuineness of the invoices and says they were sent to Meltzer. (Dkt. No. 167 at ¶ 3). Leventhal offers no evidence to the contrary. The features of the invoices Leventhal cites—page numbers, invoice numbers, and so on—raise no inference of fabrication. As explained earlier, *see* discussion, *supra*, at 10 n.4, entries on the invoices were redacted at the court's direction (*see* Dkt. No. 166) to eliminate services for which no compensation was sought. The redactions were necessary because all of the work for Meltzer was billed to a single matter entitled "Federal Court Lawsuit," *see* discussion, *supra*, at 10 n.4, probably the FHA action in which Deutsch Levy also represented Meltzer. As for the time sheets, there is no requirement that they be supplied; whether to require them rests with the court's discretion. *Harper*, 223 F.3d at 605. Meltzer's attorneys were ordered to supply the invoices, not the time sheets. (*see* Dkt. No. 166).

Leventhal's remaining argument about the fees is that Meltzer incurred them needlessly—because of foolish decisions he or his lawyers made, not anything Leventhal or Kubiak did. Leventhal argues:

All Meltzer needed to do to avoid all of the controversies between the parties

was write a three sentence email to Kubiak to the effect: "Meg I am very sorry that we couldn't get together on [the] purchase of the house. I would like you to vacate in 90 days. Will that be OK?" [5] (Dkt. No. 169 at 6). Instead, Meltzer and his "herd of 11 attorneys ... embarked upon a legal onslaught attacking Kubiak as schoolyard bullies attack—in groups." (*Id.* at 7). The legal fees Meltzer had to pay, Leventhal believes, are his own fault, a self-inflicted wound.

Leventhal's argument betrays two basic misunderstandings. The first is about what actually happened here. What happened was that when Meltzer's lawyers pursued his contractual right as a landlord to recover the premises and unpaid rent, Kubiak (with Leventhal's aid) attacked him, filing the FHA action.[6] That action, the district court observed in dismissing it, was simply "a leveraging tool in an attempt to remain in Meltzer's home rent free or, at a minimum, to delay her eviction." *Kubiak v. Meltzer,* No. 12 C 6849, 2014 WL 258707, at *2 (N.D.Ill. Jan. 23, 2014). When the FHA action did not succeed, Leventhal and Kubiak attacked again, filing the involuntary petition against Meltzer, another attempt (the district court found) "to delay the eviction."

*Id.* Casting Kubiak as the victim here and calling Meltzer's fees a needless expense ignores reality.

Leventhal's other basic misunderstanding concerns the purpose of the legal system. That purpose is to resolve disputes. *Sherrod v. Birnbaum,* 457 Fed.Appx. 573, 576 (7th Cir.2012); *York Ctr. Park Dist. v. Krilich,* 40 F.3d 205, 209 (7th Cir.1994). The purpose is not to provide a vehicle for Leventhal and Kubiak to persecute people who have disputes with them.[7] Leventhal faults Meltzer for suing Kubiak in the state court and then opposing Leventhal and Kubiak's use of the federal courts to force him to stop. But Meltzer did not have to give up his rights under state law on pain of being subjected to frivolous federal litigation. Nor, once subjected to it, did he have to go quietly without pursuing the rights federal law gave him to be compensated for his injuries and to have his persecutors punished.

Meltzer will be awarded his reasonable fees of $60,788.86. Leventhal, Kubiak, and Pegasus will be held jointly and severally liable for that amount. *See United States ex rel. Howard v. Urban Inv. Trust, Inc.,* No. 03 C 7668, 2014 WL 862749, at *2–3 (N.D.Ill. Mar. 5, 2014) (imposing joint and several liability for attorney's fees).[8]

---

**5.** When Meltzer first contacted Kubiak about the unpaid rent, she told him she wanted to buy the property. *See Meltzer,* 516 B.R. at 507. When Kubiak neither pursued the purchase nor became current on her rent, Meltzer served her with the notice terminating the tenancy. *Id.*

**6.** The attorneys were attacked, too, as were members of Meltzer's family. Named as defendants in the FHA action were Meltzer, his wife, his father, and the lawyers representing him in his dispute with Kubiak. *Meltzer,* 516 B.R. at 507.

**7.** This is why the law makes malicious prosecution and abuse of process wrongs for which

damages can be recovered. *See generally* 3 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* §§ 592–96 (2d ed.2011).

**8.** There is a potential third step to the lodestar method. Once the lodestar is calculated, it can be "adjusted." *Johnson,* 668 F.3d at 929. Typically, the adjustment involves increasing (or "enhancing") the lodestar. *Perdue,* 559 U.S. at 552, 130 S.Ct. 1662. But enhancements are made only in "rare" and "exceptional" circumstances. *Id.* There are no exceptional circumstances here warranting any adjustment, and no party requests one.

### iii. Costs

The costs recoverable under section 303(i)(1)(A) are the "costs of defending against the involuntary petition." *In re K.P. Enter.*, 135 B.R. 174, 178 (Bankr.D.Me.1992). The costs must be "compensable litigation costs" of the kind ordinarily recoverable in civil actions. *Poterek*, 169 B.R. at 906.

Meltzer requests $829.14 in costs, consisting of charges for (1) photocopies, (2) postage, (3) overnight delivery, (4) Westlaw research, (5) the filing fee for a motion for relief from stay in the chapter 13 case Leventhal filed shortly before the March 2014 sanctions hearing,[9] and (6) the fee of Schenberg's counsel, presumably for his appearance at the sanctions hearing. Leventhal does not take issue with the amount or the reasonableness of any of these costs and raises a question only about the invoice number for the filing fee in connection with the stay-relief motion. The docket in the chapter 13 case confirms that Meltzer paid the fee. *See In re Leventhal*, No. 14 B 5506 (Bankr.N.D.Ill.) (Dkt. No. 7).

The Westlaw charges, however, must be disallowed. Charges for computerized legal research are considered office overhead, and in the absence of evidence to the contrary they are assumed to have been recovered through attorney's fees. *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *19 (E.D.Mich. Dec. 20, 1996); *E.E.O.C. v. Sears, Roebuck & Co.*, 111 F.R.D. 385, 394 (N.D.Ill.1986); *Cole Taylor Bank v. Kirk Corp. (In re Kirk Corp.)*, Nos. 09 B 17236, 09 A 788, 2010 WL 2293471, at *7 (Bankr.

N.D. Ill. June 7, 2010); *but see In re Fibermark, Inc.*, 349 B.R. 385, 399–400 (Bankr.D.Vt.2006) (noting a split of authority and awarding costs). No evidence has been offered that the fees of the Deutsch Levy attorneys fail to factor in charges for Westlaw research. Without that evidence, the $723.97 in Westlaw charges cannot be awarded.

Meltzer will be awarded a total of $105.17 in costs. As with the attorney's fees, Leventhal, Kubiak, and Pegasus will be held jointly and severally liable for the costs. *See Howard*, 2014 WL 862749, at *2–3.

### b. Punitive Damages

Punitive damages under section 303(i)(2)(B) are determined the same way punitive damages generally are: the amount must be sufficient to serve the objectives of deterrence and punishment. *See Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir.2009); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 464 (7th Cir.2006). In determining what will serve those objectives, courts traditionally consider the nature, extent, and enormity of the wrong to the debtor; the intent of the creditors; and any surrounding aggravating or mitigating circumstances. *In re John Richards Homes Bldg. Co., L.L.C.*, 291 B.R. 727, 737 (Bankr.E.D.Mich.2003), *aff'd*, 439 F.3d 248 (6th Cir.2005); *In re Mundo Custom Homes, Inc.*, 179 B.R. 566, 571 (Bankr.N.D.Ill.1995). The determination is a discretionary one. *G.G. v. Grindle*, 665 F.3d 795, 800 (7th Cir.2011); *Gaffney*, 451 F.3d at 464.

The enormity of the wrong to Meltzer, first of all, was substantial. As

---

9. Leventhal filed a chapter 13 petition on February 20, 2014, five weeks before the hearing. *See In re Leventhal*, No. 14–5506 (Bankr.N.D.Ill.). Meltzer moved for relief from the stay, and that motion was granted in part to permit the parties to comply with the pretrial order for the sanctions hearing. (*Id.*

Dkt. Nos. 7, 8, 13). The trustee moved to dismiss the chapter 13 case, and that motion was granted on March 14, 2014. (*Id.* Dkt. Nos. 12, 27). Leventhal appealed, but the appeal was dismissed for want of prosecution. (*Id.* Dkt. Nos. 30, 47).

this court observed in finding the petition filed in bad faith, subjecting someone to an involuntary petition is "serious business." *Meltzer*, 516 B.R. at 515. An involuntary case is "an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *In re Reid*, 773 F.2d 945, 946 (7th Cir.1985). Although Meltzer appears not to have suffered these injuries—his sole quantifiable injury consists of his attorney's fees and costs—he was spared only because the case was dismissed quickly, and credit reporting agencies were notified of the dismissal. (*See* Dkt. Nos. 36, 41).

Next, the intent of the creditors was malicious. Not one of the creditors had a claim against Meltzer meeting the requirement in section 303(b)(1) that the claim be neither contingent as to liability nor the subject of a bona fide dispute. Two of the creditors, Leventhal and Pegasus, had no claim whatever against Meltzer. Pegasus did not even exist until two weeks before the petition date. The only claim of the other creditor, Kubiak, was the claim in the FHA action, and that claim was very much in bona fide dispute. The petition and accompanying memoranda were "not only false but fraudulent," *Meltzer*, 516 B.R. at 506, and bore at least one forged signature. The petition was filed, not for any legitimate purpose, but to halt Meltzer's eviction action in the state court and

pressure him to give up his claim. Leventhal made no attempt to disguise the reason the petition was filed.

For Leventhal, at least, there are no mitigating factors, and he does not claim there are. In fact, he concedes he "deserves a monetary penalty of some sort in this matter for behavior that would have better been left undone." (Dkt. No. 169 at 7). There are, however, three aggravating factors, two of which apply to Kubiak and all of which apply to Leventhal.

● First, as noted earlier, the involuntary case Leventhal and Kubiak filed was only one part of a wider litigation war waged against Meltzer. The war began with Kubiak's FHA action against Meltzer. When Meltzer filed the eviction action, Leventhal, Kubiak, and Pegasus filed the involuntary petition. Two days later, Leventhal recorded a lis pendens notice against Meltzer's property, *Meltzer*, 516 B.R. at 510, and Leventhal, Kubiak, and Pegasus then filed an action against Meltzer in the state court to "foreclose" on the lis pendens, *id.* at 511 n. 7. Kubiak (in reality Leventhal) then purported to remove the eviction action to the district court. *Id.* at 507–08. The action was later remanded. *Id.* at 508. Leventhal and Kubiak subsequently removed the eviction action again and sought to have it consolidated with the FHA action and the bankruptcy case. *Id.* at 511. Again, the eviction action was remanded. *Id.*[10] As

10. The description of the two removals in the court's earlier opinion is correct but somewhat confusing. *Meltzer*, 516 B.R. at 508, 511. To be clear, Leventhal and Kubiak first sought to remove the eviction action on September 4, 2012, about a month after they filed the involuntary petition. The notice of removal was filed in the FHA action in the district court, not in the state court, and so was ineffective. *See Kubiak v. Meltzer*, No. 12 C 6849, 2013 WL 1114203 (Dkt. No. 5). Nonetheless, Meltzer moved to remand the action. (*Id.* Dkt. No. 19). In March 2013,

the district court acknowledged that the removal had been ineffective but granted Meltzer's motion to remand the action, which had long since proceeded to judgment. (*Id.* Dkt. No. 66). In August 2013, Leventhal and Kubiak removed the eviction action to the district court. This time, they succeeded. *Meltzer v. Kubiak*, No. 13 C 5619 (N.D.Ill.). Leventhal and Kubiak then moved in the FHA action to have the eviction action consolidated with the FHA action and the bankruptcy case. *Kubiak v. Meltzer*, No. 12 C 6849, 2013 WL 1114203 (N.D.Ill.2013) (Dkt. No. 98). But the district

Meltzer aptly observes, "[w]hat started as a matter of unpaid rent ... escalated" into multiple cases, "all of them bogus...." (Dkt. No. 171 at 1).

■ • Second, Leventhal and Kubiak have abused the judicial system similarly in the past. As detailed in *Meltzer*, 534 B.R. at 768–70, 2015 WL 4550017, at \*8–9, Leventhal repeatedly sued Gene Schenberg, a Missouri resident, in Illinois state and federal courts. When Schenberg brought an action against Leventhal, won, and sought to collect his judgment, Leventhal sued Schenberg and his lawyers and filed false lis pendens notices against the lawyers' property. More recently, Leventhal has repeatedly removed (on Kubiak's behalf) an action that Leigh Peterson filed against Kubiak to register a foreign judgment against her. When that action was remanded, Kubiak (in fact Leventhal) sued Peterson and her lawyer in the district court. Then, they removed the remanded action a second time. Earlier this year, the district court placed both Leventhal and Kubiak on its list of restricted filers. *See In re Leventhal*, No. 15 C 352 (N.D.Ill. Jan. 15, 2015); *In re Kubiak*, No. 15 C 353 (N.D.Ill. Jan. 15, 2015). Recidivism is an aggravating factor in awarding punitive damages where, as here, the current conduct and the earlier conduct are sufficiently similar. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–23, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

• Third, monetary awards and penalties do not appear to deter Leventhal in the slightest. The judgment Schenberg obtained against Leventhal—for malicious prosecution and abuse of process—was for $274,000. *See Meltzer*, 534 B.R. at 768–69,

2015 WL 4550017, at \*8. When Leventhal removed Schenberg's action from the Missouri state court to the district court in Chicago, the district court awarded Schenberg another $5,000 as a sanction. *Id.* at 770, at \*10. Despite the clear signals these awards ought to have sent about misusing the judicial process, Leventhal continues to misuse it. He has been incorrigible.

Although no mitigating factors help Leventhal, one mitigating factor weighs in Kubiak's favor. Leventhal, not Kubiak, seems to have been the driving force behind the involuntary petition, and Kubiak's involvement was limited. Her signatures on the petition and accompanying memorandum were photographic images, not original ink signatures. She never appeared in court during the case. She did not resist the motion to dismiss, did not file pretrial materials before the hearing on dismissal, did not file pretrial materials before the hearing on sanctions, and did not appear at that hearing. (Meltzer contends she even ignored a subpoena served in connection with the sanctions hearing.) Virtually all of the motions from the petitioners came from Leventhal. The few post-petition papers Kubiak purportedly filed again bore a photographic image of her signature almost certainly placed there by Leventhal. (*See, e.g.,* Dkt. Nos. 155, 163, 173, 178, 191).[11]

Kubiak deserves some credit, then, for not pressing the matter. But the extent to which she was involved in filing and prosecuting the involuntary case—that is, the extent to which she authorized Leventhal to act for her—is unclear. If, as Lev-

---

court remanded the eviction action, *Meltzer v. Kubiak*, No. 13 C 5619 (N.D.Ill.) (*Id.* Dkt. No. 13), and denied the motion to consolidate, *Kubiak v. Meltzer*, No. 12 C 6849, 2013 WL 1114203 (N.D.Ill.2013) (Dkt. No. 99).

11. The same cannot be said of the FHA action. Although Leventhal was plainly the author of the papers Kubiak filed in that action, the complaint and some (though not all) of the papers bear what appear to be Kubiak's original signature.

enthal claims, the entire case was his project and Kubiak knew little or nothing about it, she "never protested that was so—although she had notice of all the proceedings, including notice of Meltzer's sanctions requests, and so had plenty of opportunity to protest." *Meltzer,* 516 B.R. at 518 n.13.[12] Because she had notice, she must be presumed to have known what was going on. And because she knew, she could not simply turn a blind eye, expecting willful ignorance to protect her. Kubiak must bear the responsibility for having allowed Leventhal to file and prosecute an irresponsible, abusive involuntary petition in her name.[13] *See Meltzer,* 516 B.R. at 518 (noting that even if Kubiak knew little about the case, "she had no right to file a thoughtless involuntary petition against Meltzer"). Any mitigation on the basis of her supposed non-involvement is therefore limited.

Given the seriousness of the petitioners' conduct, their malicious intent, and the aggravating and mitigating factors discussed, Meltzer will be awarded punitive damages as follows: $120,000 against Leventhal, $40,000 against Kubiak, and $20,000 against Pegasus.

█ In opposing punitive damages, Kubiak (really Leventhal) argues that she has already been punished enough through the state court's $52,600 damage award in the eviction action. But the damages the state court awarded were compensatory damages for back rent, not punitive damages. (*See* Meltzer Exs. 17, 19). Kubiak also contends that an award of punitive damages would violate the Eighth Amendment. She is mistaken. The Eighth Amendment is concerned with punishments that are criminal, not civil, in nature. *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 260, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). The Supreme Court has specifically held that the Eighth Amendment does not restrict awards of punitive damages. *Browning–Ferris,* 492 U.S. at 260, 109 S.Ct. 2909 (discussing the Excessive Fines Clause).

█ Because Leventhal raises constitutional concerns, however, it is worth noting that the punitive damage awards here handily satisfy the constitutional provision that does apply: the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1. Because punitive damages vindicate the government's "legitimate interests in punishing unlawful conduct and deterring its repetition," an award violates due process only when it is "grossly excessive in relation to

---

**12.** All of the declarations that Kubiak was not involved have come from Leventhal, not Kubiak herself. The post-hearing memorandum Kubiak filed stating she "did not know and had no reason to know that the actions being carried out by Leventhal" would harm Meltzer bore the same photographic image of her signature and was composed in Leventhal's distinctive rhetorical style. (Dkt. No. 163). A Kubiak affidavit to similar effect was admitted into evidence at the sanctions hearing, but when asked whether he had written and signed the affidavit, Leventhal asserted his Fifth Amendment privilege. *Id.* at 518. The court concluded that "the affidavit was a fake and Kubiak's signature forged." *Id.*

**13.** In the memorandum that Kubiak (really Leventhal) filed, she invokes what she calls the "innocent spouse doctrine." (Dkt. No. 163 at 1–2). There is no such doctrine. Kubiak is referring to a provision of the Internal Revenue Code, 26 U.S.C. § 6015, that allows a spouse to avoid joint and several liability for income taxes if the so-called "innocent spouse" was unaware of the other spouse's reporting deficiency. *See Estate of Kanter v. Comm'r,* 337 F.3d 833, 870 (7th Cir.2003), *rev'd on other ground sub nom.Ballard v. Comm'r,* 544 U.S. 40, 125 S.Ct. 1270, 161 L.Ed.2d 227 (2005). This is not a tax case. Even if it were, Leventhal and Kubiak were not spouses when the involuntary petition was filed.

these interests." *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In determining whether an award is grossly excessive, courts consider: (1) the reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm the plaintiff suffered and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil or criminal penalties authorized or imposed in comparable cases. *Campbell,* 538 U.S. at 418, 123 S.Ct. 1513; *Gore,* 517 U.S. at 575–84, 116 S.Ct. 1589; *E.E.O.C. v. AutoZone, Inc.,* 707 F.3d 824, 838 (7th Cir.2013); *John Richards Homes,* 439 F.3d at 265.

■ The first of these "guideposts," the degree of reprehensibility, is the most important, *Campbell,* 538 U.S. at 419, 123 S.Ct. 1513; *Gore,* 517 U.S. at 574, 116 S.Ct. 1589. Relevant factors include whether (1) the harm was physical rather than economic; (2) the conduct evinced an indifference to or reckless disregard for the health or safety of others; (3) the target of the conduct was financially vulnerable; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Campbell,* 538 U.S. at 419, 123 S.Ct. 1513; *Gore,* 517 U.S. at 575–76, 116 S.Ct. 1589; *Estate of Moreland v. Dieter,* 395 F.3d 747, 756–57 (7th Cir.2005).

The thoroughly reprehensible nature of Leventhal and Kubiak's conduct—particularly Leventhal's—has been detailed here and in past opinions. Again, Leventhal and Kubiak deliberately filed an involuntary petition against Meltzer to torment him and prevent him from exercising his rights in the state court. They filed the petition knowing perfectly well it was fraudulent: the petition involved the fabrication of claims, the impersonation of others, the forging of signatures, even the creation of a new corporation to ensure there would be enough creditors. And with Leventhal, at least, the misconduct did not stop with the petition. Leventhal resisted its dismissal, resisted Meltzer's requests for damages and other relief, filed a false affidavit with another forged signature in which Kubiak purported to deny her involvement, even harassed Meltzer repeatedly with post-hearing motions. *See Meltzer,* 534 B.R. at 760–62, 2015 WL 4550017, at *1–2. The involuntary case was only one part of Leventhal and Kubiak's torrent of litigation abuse. "By any objective measure," the involuntary case against Meltzer was "an extreme case of abuse of the bankruptcy process." *John Richards Homes,* 291 B.R. at 739 (awarding $2 million in punitive damages for bad faith petition).

■ The second guidepost, the disparity between the harm suffered and the punitive damages awarded, addresses the relationship between awards of compensatory and punitive damages. *Campbell,* 538 U.S. at 424, 123 S.Ct. 1513; *Gore,* 517 U.S. at 580, 116 S.Ct. 1589. There is no set ratio that must not be exceeded, but "single-digit multipliers are more likely to comport with due process." *Campbell,* 538 U.S. at 425, 123 S.Ct. 1513. The Supreme Court has approved ratios of as much as 4-to-1, *see id.* at 425, 123 S.Ct. 1513, and the Seventh Circuit has described a 3.3-to-1 ratio as "easily permissible," *Kapelanski v. Johnson,* 390 F.3d 525, 534 (7th Cir.2004). But there are "no rigid benchmarks." *Campbell,* 538 U.S. at 425, 123 S.Ct. 1513. The precise award depends on the facts and circumstances of the case. *Id.*

■ The punitive damage awards here do not begin to approach the constitutional outer limit. The compensatory damages award is $60,894.03. The $120,000 punitive damage award against Leventhal is

slightly less than twice that, a 2–to–1 ratio. *See AutoZone,* 707 F.3d at 840 (calling a 2–to–1 ratio between punitive and compensatory damages "well within the range of constitutionally acceptable values"). The $40,000 and $20,000 punitive damage awards against Kubiak and Pegasus are less than the compensatory damage award—a ratio lower than 1–to–1.

■ The third and final guidepost is the difference between the punitive damage award and the criminal or civil penalties authorized or imposed in comparable cases. *Campbell,* 538 U.S. at 428, 123 S.Ct. 1513; *Gore,* 517 U.S. at 583, 116 S.Ct. 1589. Consideration of these penalties "allows courts to show 'substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue.'" *AutoZone,* 707 F.3d at 840 (quoting *Gore,* 517 U.S. at 583, 116 S.Ct. 1589). The existence of a criminal penalty in particular has a "bearing on the seriousness with which [the government] views the wrongful action." *Campbell,* 538 U.S. at 428, 123 S.Ct. 1513.

The punitive damage awards here are comparable to, or lower than, the maximum criminal penalties for the conduct in question. The analogous federal crimes are false oaths in a bankruptcy case, 18 U.S.C. § 152, bankruptcy fraud, 18 U.S.C. § 157, and perjury, 18 U.S.C. § 1621. *See John Richards Homes,* 291 B.R. at 739. Conviction of these felonies can result in a fine of as much as twice the victim's loss. 18 U.S.C. § 3571(d); *John Richards Homes,* 291 B.R. at 739. Meltzer's loss here consisted of the $60,894.03 in attorney's fees and costs he was compelled to spend. The maximum fine based on his loss would therefore be $121,788.06. The punitive damages award against Kubiak is a third of that amount, the award against Pegasus only a sixth. The award against Leventhal is roughly the same.

Meltzer, then, will be awarded $120,000 in punitive damages against Leventhal and $40,000 in punitive damages against Kubiak, and $20,000 in punitive damages against Pegasus. These amounts comply with constitutional norms and are the minimum necessary to achieve some measure of deterrence and punishment.

#### c. Injunction against Further Filings

■ Finally, restrictions will be imposed on the ability of Leventhal, Kubiak, and anyone acting on their behalf to file documents in the bankruptcy court for this district. They will be barred from filing any document (other than a notice of appeal from this decision) without leave of court.

Courts are places "in which serious people attend to serious business," *Morris v. Jenkins,* 819 F.2d 678, 682 (7th Cir.1987), or should be. When litigants abuse the courts—"in the classic sense of using the courts to pursue ends other than the vindication of claims believed to be meritorious," *Free v. United States,* 879 F.2d 1535, 1536 (7th Cir.1989)—the business of the courts is disrupted. Judicial resources are limited. Because abusive litigation takes time, often a great deal of time, it wastes those resources, diverting attention from parties who deserve it. *In re Sindram,* 498 U.S. 177, 179–80, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991); *In re McDonald,* 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989); *U.S. ex rel. Verdone v. Circuit Court,* 73 F.3d 669, 671 (7th Cir.1995). Very simply, litigants who file frivolous, abusive papers "interfere with the orderly administration of justice." *Verdone,* 73 F.3d at 671.

■ Federal courts have a responsibility to protect themselves from abuse, *id.* and they have "ample authority" to do so by restricting the ability of abusive litigants to file. *Pullen–Walker v. Executive Comm. of the U.S. Dist. Ct.,* 482 Fed.Appx.

185, 186 (7th Cir.2012); *see also Perry v. Pogemiller,* 16 F.3d 138, 140 (7th Cir. 1993); *In re Davis,* 878 F.2d 211, 212 (7th Cir.1989); *Lysiak v. Comm'r,* 816 F.2d 311, 313 (7th Cir.1987). Bankruptcy courts are granted that same authority in section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a), which confers "broad powers ... to prevent an abuse of the bankruptcy process," *In re Volpert,* 110 F.3d 494, 500 (7th Cir.1997); *see, e.g., In re Kristan,* 395 B.R. 500, 511 (1st Cir. BAP 2008) (holding that section 105(a) grants authority to impose filing restrictions); *Alkasabi v. Rampart Acquisition Corp.,* No. H–09–4116, 2011 WL 1232341, at *9 (S.D.Tex. Mar. 31, 2011) (same).

■■■ Filing restrictions, however, must be "narrowly tailored" to the type of abuse and must not "bar the courthouse door entirely." *Pullen–Walker,* 482 Fed. Appx. at 187; *see also Chapman v. Executive Comm. of the U.S. Dist. Ct.,* 324 Fed. Appx. 500, 502 (7th Cir.2009); *McCready v. eBay, Inc.,* 453 F.3d 882, 892 (7th Cir. 2006); *Kristan,* 395 B.R. at 511. The restrictions should usually not be permanent. *Chapman,* 324 Fed.Appx. at 502–03; *Support Sys. Int'l, Inc. v. Mack,* 45 F.3d 185, 186 (7th Cir.1995) (stating that "[p]erpetual orders are generally a mistake"). And no restriction should be imposed without giving the litigant in question notice and a chance to respond. *Wallis v. Executive Comm. of the U.S. Dist. Ct.,* 527 Fed.Appx. 570, 572 (7th Cir.2013); *Kristan,* 395 B.R. at 511. The nature of the restrictions is a matter for the court's discretion. *Henry v. United States,* 360 Fed.Appx. 654, 656 (7th Cir.2010).

Restricting the future ability of Leventhal and Kubiak to file anything in the bankruptcy court for this district without permission is entirely warranted here. As discussed above (and in earlier opinions in this matter, *see Meltzer,* 534 B.R. at 768–70, 2015 WL 4550017, at *8–9; *Meltzer,*

516 B.R. at 507–13), the two are serial abusers of the judicial system who employ the litigation process to harm others. When someone has the nerve to seek redress against them in the state courts (as Meltzer, Peterson, and Schenberg did), Leventhal and Kubiak invoke the federal courts and their processes to retaliate. Not only is their retaliation relentless but it extends beyond their opponents to their opponents' lawyers and family members. The district court has already placed Leventhal and Kubiak on its list of restricted filers. Given their use of the bankruptcy court to harass Meltzer, restrictions comparable to the district court's restrictions are plainly appropriate.

The restrictions will be narrowly tailored—limited to the bankruptcy court for this district and barring filings only from Kubiak, Leventhal, and anyone acting on their behalf. The restrictions also will not close the courthouse door entirely: filings will be possible with judicial permission, and Leventhal and Kubiak will be able to ask to have the restrictions lifted after five years. The Seventh Circuit has consistently upheld screening orders of this kind as a way of curbing litigation abuse. *See, e.g., Wallis,* 527 Fed.Appx. at 572; *Pullen–Walker,* 482 Fed.Appx. at 187; *Srivastava v. Daniels,* 409 Fed.Appx. 953, 955–56 (7th Cir.2011); *Henry,* 360 Fed.Appx. at 656; *Davis,* 878 F.2d at 212–13; *Lysiak,* 816 F.2d at 313; *see also Carr v. Tillery,* 591 F.3d 909, 920 (7th Cir.2010) (calling monetary sanctions and regulatory injunctions "standard remedies for misconduct in litigation").

Meltzer, though, wants broader relief. In his amended sanctions motion he asked for a bar not only against the petitioners but "any individual or entity with whom they are associated." (Dkt. No. 55 at 12). And the request became more elaborate in his post-hearing memorandum. There,

Meltzer sought a hodge-podge of overlapping injunctive relief: (1) a bar to filings "in this case" without permission; (2) a bar to *pro se* filings in the bankruptcy court without permission; (3) a bar to filings in the bankruptcy court against anyone who has "encountered" the petitioners in the bankruptcy court or the Circuit Court for the 19th Judicial Circuit, Lake County, Illinois; (4) a requirement that if the petitioners file "any case or paper" in any court in the country, they provide the court with this court's opinion finding sanctions warranted; (5) a recommendation to the district court that it bar filings in this district, in other districts in this circuit, or both; and (6) a recommendation to the district court that it bar new actions in "any tribunal" against anyone who has "encountered" the petitioners either in the bankruptcy court or in the Lake County court. (Dkt. No. 137 at 6–7).

These requests will be declined. Some could not be enforced as a practical matter: the bars to filings against people who have "encountered" the petitioners and the requirement that the petitioners provide other courts with this court's earlier opinion. Some are no longer necessary: Leventhal and Kubiak are already restricted filers in the district court. Others are of questionable legality. Although the court in *In re Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir.1984), approved a bar to filings in all federal courts, other courts have not, *see Van Deelen v. City of Kansas City*, 262 Fed.Appx. 723, 724 (8th Cir.

2007); *Sieverding v. Colorado Bar Ass'n*, 469 F.3d 1340, 1344 (10th Cir.2006), and even *Martin–Trigona* balked at a federal bar to filings in state courts, *see Martin–Trigona*, 737 F.2d at 1263; *see also Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 191 (5th Cir.2008) (same); *Sieverding*, 469 F.3d at 1344 (same). The filing restrictions to be imposed are carefully drawn to address Leventhal and Kubiak's abuse and are consistent with the district court's approach in addressing the same litigants.

Although given an opportunity to respond to Meltzer's request for filing restrictions against him, Leventhal offers no opposition. He never denies having abused the courts, never claims that any of his filings have been legitimate, and never asserts that he needs unfettered access to the courts either because he has meritorious claims against anyone or even that he might have them. His lack of opposition is telling. It is fair to assume that unless barred he will go right on doing what he has been doing.[14]

The only opposition comes from Kubiak—or rather Leventhal on Kubiak's behalf. Kubiak asserts that no evidence was "adduced at trial" showing she had engaged in abusive filings. (Dkt. No. 163 at 5).

She is mistaken on several levels.

● First, plenty of evidence was adduced at the hearing. There was evidence not only of the abusive involuntary petition but

**14.** The assumption is a fair one because the district court's orders restricting the ability of Leventhal and Kubiak to file here have simply caused them to shift their attentions to a different district. In June 2015, Leventhal purported to remove Peterson's foreign judgment action from the Circuit Court of Cook County, Illinois, to the U.S. District Court for the Eastern District of Wisconsin. *See Peterson v. Kubiak*, No. 2:15–cv–00751–JPS (E.D.Wis.). The district court immediately re-

manded the removed action. (*Id.* Dkt. No. 7). Two weeks later, Kubiak brought an action in the same district against Peterson's attorneys alleging violations of the Fair Debt Collection Practices Act. *See Kubiak v. Shannon, et al.*, No. 2:15–cv–00813–LA (E.D.Wis.). That action is still pending. The notice of removal and the FDCPA complaint bear all the hallmarks of Leventhal: the same format and style of his other filings as well as the photographic image of Kubiak's signature.

also of (1) her abusive FHA action against Meltzer (Dkt. No. 203, Tr. dated Mar. 27, 2014, at 114–18; Meltzer Exs. 3–13); (2) her notices of removal attempting to remove the eviction action to the district court (Dkt. No. 203, Tr. dated Mar. 27, 2014, at 118–20; Meltzer Ex. 18); (3) the lis pendens she and Leventhal filed against Meltzer's property (Dkt. No. 203, Tr. dated Mar. 27, 2014, at 45–46; Meltzer Ex. 23); and (4) the complaint she and Leventhal filed purporting to "foreclose" on the lis pendens (Dkt. No. 203, Tr. dated Mar. 27, 2014, at 123–28; Meltzer Exs. 21, 22). Meltzer testified that he had been litigating with Leventhal and Kubiak for "[a]pproximately 19 months" and could not "keep track of all the judges and lawsuits." (Dkt. No. 203, Tr. dated Mar. 27, 2014, at 133).

■ • Second, as if that evidence were not enough, the dockets of the bankruptcy and district courts are replete with additional proof of Leventhal and Kubiak's abuses not only in this case but in the Schenberg and Peterson matters. Courts are entitled to take judicial notice of the records of proceedings in related matters, *see Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir.1996); *Philips Med. Sys. Int'l, B.V. v. Bruetman*, 982 F.2d 211, 215 n. 2 (7th Cir.1992), and in deciding whether to impose filing restrictions do so routinely, *see, e.g., Martinez v. Martinez,* 517 Fed.Appx. 634, 635 (10th Cir.2013); *Rose v. Utah State Bar*, 471 Fed.Appx. 818, 820 (10th Cir.2012); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir.1983) (concluding that "we clearly have the power to take judicial notice of Green's extensive record of litigation"); *In re Moreland*, No. 12–MC–77, 2012 WL 4471111, at *1 (C.D.Ill. Sept. 25, 2012).

■ • Third, Kubiak's argument assumes "that the sole judicial role in this proceeding is as a neutral arbiter of a dispute between private parties." *Mar-*

*tin–Trigona*, 737 F.2d at 1261. It is not. Federal courts have an obligation to "protect their jurisdiction from conduct which impairs their ability to carry out [their] functions." *Id.*; *see also McDonald*, 489 U.S. at 184 n. 8, 109 S.Ct. 993; *In re Chapman*, 328 F.3d 903, 905 (7th Cir. 2003); *Perry*, 16 F.3d at 140; *Davis*, 878 F.2d at 212. In carrying out that obligation, courts need not wear blinders, ignoring what court records plainly show and letting the ability to operate effectively depend on the vagaries of private litigation. *See, e.g., Davis*, 878 F.2d 211 (noting that because of "the random assignment of newly-filed cases, it took some time" until an abusive litigant's approach was spotted).

Kubiak next observes that "even convicted felons" have a constitutional right of access to the courts. Filing restrictions, she says, would violate that right.

■ Kubiak is mistaken. Certainly, the Due Process Clause of the Fourteenth Amendment gives her a right of access to the courts, *Tennessee v. Lane*, 541 U.S. 509, 523, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), one that has even been called "fundamental," *id.* at 533–34, 124 S.Ct. 1978; *see also Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). But that right is not "absolute or unconditional." *Green*, 699 F.2d at 369; *see also Chapman*, 328 F.3d at 905. In particular, there is no right of access to the courts to harass and intimidate others. A person is instead entitled only to "meaningful access." *Bounds*, 430 U.S. at 823, 97 S.Ct. 1491 (noting that "meaningful access … is the touchstone"); *Chapman*, 328 F.3d at 905. The restriction that will be imposed here – one that bars filing without advance court permission—is customary, provides meaningful access, and does not violate the Constitution. *See Chapman*, 328 F.3d at

905; *see also Henry,* 360 Fed.Appx. at 656; *Davis,* 878 F.2d at 212.

Finally, Kubiak insists again that she is blameless here. According to Kubiak, she "did not know and had no reason to know that the actions being carried out by Leventhal in this case would or might cause any damage to Meltzer." (Dkt. No. 163 at 2).

Kubiak's protestations of innocence— really Leventhal's protestations on her behalf—are wholly unconvincing. True, Leventhal appears to have orchestrated Kubiak's litigation against Meltzer in the district court, state court, and bankruptcy court, just as he is now directing her efforts against Peterson here and elsewhere. But as discussed earlier, *see* discussion, *supra,* at 19–20, if Kubiak did not authorize Leventhal to run interference for her, not once did she appear before the court to say so, nor did she file a single document disavowing his actions. *See Meltzer,* 516 B.R. at 518 (making this observation). This, although she received notice of all the proceedings in the involuntary case and surely knew what Leventhal was up to. Kubiak had no right to abuse the courts by proxy. She must face the consequences for what she allowed to be done on her behalf.

Leventhal, Kubiak, and anyone acting on their behalf will be barred from filing any document in the bankruptcy court for this district (other than a notice of appeal from this decision) without first obtaining leave of court.

### 4. Conclusion

For these reasons, alleged debtor Michael Meltzer is awarded $60,788.86 in attorney's fees and $105.17 in costs against Howard Leventhal, Malgorzata Kubiak, and Pegasus Electronics HK Ltd., jointly and severally. Meltzer is awarded $120,000 in punitive damages against Leventhal, $40,000 in punitive damages against Kubiak, and $20,000 in punitive damages

against Pegasus. Leventhal, Kubiak, and anyone acting on their behalf are enjoined from filing any new document in the bankruptcy court for this district (apart from a notice of appeal from this decision) without first obtaining leave of court. Meltzer was previously found entitled to relief under section 303(k). *See Meltzer,* 516 B.R. at 518–19. A separate order will be entered including that relief and the relief awarded in this decision.